Mr. Mohammed was found to have committed marriage fraud when he married his U.S. citizen wife, Ms. Flores. This was based upon a finding by the board that my client and his first wife, Ms. Kahn, must have been living together for at least a 17-month period during his marriage to Ms. Flores. Now, the problem with this finding is that it was based upon Ms. Kahn's immigration and bankruptcy records that were admitted into evidence. And my client had no opportunity to question Ms. Kahn about her use of this... It wasn't just that, was it? I mean, wasn't there a lease contract and a bank statement and an energy bill? Those were not just her statements, those were kind of conventional business records showing her at that address. Isn't that true? Well, each one of those is not necessarily, I would say, a conventional business record, but each one of those were submitted by Ms. Kahn into her immigration file. And certainly my client had the right to cross-examine not just Ms. Kahn, but the makers about those documents where she was using his address, because her use of his address would have been an out-of-court statement. And understandably, that is a business record, but those business records, the address for her obtained on those records, that was given to these agencies by her, presumably. But there was more than that. I mean, first of all, there was the fact that they had a child together, not too long before, and that he denied it. He denied that he knew about it, and then later he came to that and acknowledged that not only did he know about it, but he was there at the birth. And secondly, that they traveled to India on the same planes through some rather remote, non-predictable places on two different occasions, an exact same day in both directions, and that they worked in the same place, although he claims he didn't know that or didn't talk to her or something. So, it was clearly rather a lot of contact between them in this period that he was saying he didn't see her at all. But there was no, and all of this doesn't really address the travel together, doesn't really address the issue of whether or not this was the marriage to Ms. Flores was a sham marriage. But he was also lying about all these things. That's a bit of a clue. It is. He said he had no idea she was on the airplane. It is definitely, I'm definitely not here claiming that my client did not lie. Okay, I think that's very clear on the record. But it doesn't address, it's very, the test for what constitutes a sham marriage only addresses how the marriage began. So, the test is whether the parties married in good faith, attending to establish a life together. And all of these subsequent things that occurred doesn't address whether or not Ms. Flores and Mr. Muhammad intended to establish a life together when they were married in January of 2005. And of course, Ms. shouldn't believe anything he says in terms of whether they were establishing a life together. Well, now USCIS found that they were intending to establish a life together when they approved the I-130. And when they granted him conditional residence in the first place. I didn't know any of this at the time. I'm sorry. I didn't know any of the rest of it at the time. Yes, no, that's, and that's understandable. But all of that, all of those incidents occurred later. So, and none of it actually addresses the evidence that was admitted. Don't some of the records straddle the period of the beginning of the marriage? So, you know, we have Khan at that same apartment in 2003, 2005, 2006. But Mr. Muhammad was not there. And his address, his address did not, was not reflected, I'm sorry, he didn't move into that address until 2007. So, but if you look at, for example, page 567, of course, my client never had the opportunity to cross-examine Ms. Khan about her use of this address. And if you look at, for example, on page 567, Ms. Khan's 10-year-old daughter, her home address is listed on Burnside Drive during the period of time that these, that the court found that my client and Ms. Khan were living together. So it's during that same period of time when the 10-year-old daughter is not listed as having lived with Ms. Khan. But if my client had had the opportunity to cross-examine Ms. Khan, he would have been able to inquire whether she was living on Burnside with her daughter or in Oxford, as she claimed in her immigration and bankruptcy paperwork. There's also... Could he have subpoenaed Ms. Khan? He could have, but he didn't have the burden of proof. So all of these documents are being submitted by the department. And she was... And he asked, he requested that Ms. Khan come in, and she refused. But he actually subpoenaed Ms. Flores, and she ignored the subpoena, which is only an administrative subpoena, admittedly. But it was the department who had the burden of proof, and they submit all of this evidence with declarations by Ms. Khan that he was never allowed to or permitted to ask Ms. Khan about. And I think this court's precedent does cover the ability of a person who's about to lose their lawful permanent residence status to cross-examine the maker of these kinds of documents and these kinds of records. Well, go back to 2005, which you're identifying as the critical period, and that's when the third child was born, right? That's when the third child was born, yes. And he committed flat-out perjury in saying that he was not present at the birth and didn't know about that child. Isn't that correct? He admitted that he was there, right? So he did come about having... Yes, he did, and he admitted it. And that goes right to the relevant time period at the start of the marriage. Right, but USCIS and immigration judges, the issue is whether or not USCIS and immigration judges can impose a traditional view of a typical marital life. And Mr. Mohammed and Ms. Flores, they lived together until, I think it was 2009, when their marriage finally fell apart. And he hadn't told her about this dalliance, and he hadn't admitted to Ms. Flores about that. So indeed, there is one issue that does cover that period of time. But again, a lot of the evidence in this record, if that were the only thing that was admitted into the record, right? If that was the only thing, then the question is whether there is substantial evidence to find that my client engaged in a sham marriage, whether he engaged in marriage fraud. And if that were the only piece of evidence, given all of the other pieces of evidence in this case that Mr. Mohammed never actually got to question the maker about, then the evidence was not substantial. Did the agency have a credibility finding in general with regard to Mr. Mohammed? Did USCIS or did the immigration court? I'm sorry. The immigration court, yes. She found that he was not credible. So that means that he was not credible as to essentially anything he said, including what he said about his original entering into marriage with Ms. Flores, right? Well, again, the department has the burden of proof here. Well, right. So if his account is entirely discounted, and then you have this other evidence of the child being born and him living, and the documents, whatever they're worth, are higher than zero. In other words, if he's zero and the documents are, you know, plus a half, there's something over nothing in terms of whether he was, in fact, did what he said he did. So the comparison, so if you, for example, let's say we get rid of all of the very, very problematic evidence. And, of course, my client was found to be not credible. The comparison of the documentary evidence that Mr. Mohammed submitted, because he submitted a lot of documentary evidence supporting establishing a valid marriage, and I know I'm out of time here, so I'm just going to try and wrap it up. Then it comes down to whether or not there was substantial evidence to find that he committed marriage fraud. And marriage fraud is a big deal. And there's just, on this record, if you get rid of the problematic evidence, there's just not substantial evidence. And I see... I am going to run out of room for one second. I'll be right back. Okay. Okay. Thanks. Good morning, Your Honors, and may it please the Court. Christopher Bates for the Respondent. The most straightforward way for this Court to resolve this case is with regard to the petitioner's request for relief from removal. DHS charged the petitioner with two grounds of removability. The first is marriage fraud. The second was termination of his conditional permanent residence status. The petitioner conceded the second ground and sought relief from removal with an I-751 petition. Because he had divorced from Ms. Flores at the time that he filed that second petition that the Court was addressing, it was the petitioner's burden to establish that he entered into his marriage with Ms. Flores in good faith. And so even setting aside the discussion of the evidence that was admitted that may have contained some hearsay statements, here the record does not compel the conclusion that the petitioner showed by the preponderance of the evidence that he had entered into his marriage in good faith. And that is a substantial evidence standard. That is sufficient for this Court to resolve this matter because there were, again, two grounds for removability, the second of which the petitioner conceded. And so there is relief for removal where the burden was on the petitioner. The burden is on him as opposed to the government. I'm sorry. I'm sorry, Your Honor. The burden is on him as opposed to on the government. That's correct. And it is so here because he filed the second 751. In fact, the first one as well, once his wife withdrew from the first one, the burden was on him to establish he was eligible for relief. And so he had to show by preponderance of the evidence that he had entered into the marriage in good faith. And so even setting aside the evidence that was admitted that may have contained hearsay statements, he did not establish by the preponderance of the evidence given the other evidence that was in the record to include the fact that he had had a sexual encounter with his first wife. It's a little unclear from the record whether that was right before or right after his marriage to his second wife, but he claimed to have been in love with his second wife and entered into the marriage with her. But, you know, within a month of that, he had had a sexual encounter with his first wife, an unprotected sexual encounter. Counsel, let me ask you this. Are you arguing or saying that in the Ninth Circuit that immigration proceedings are subject to the hearsay rule? I'm not, Your Honor. You keep saying subject to the hearsay. I'm not following that. So I didn't know that they were, and you're telling me that they're not. So what this court has said is that the test for miscibility is whether the evidence is probative and whether a submission is fundamentally fair. And this court does have— That's a long ways from hearsay. That's correct, Your Honor. What this court has said is that in terms of determining whether the admission of evidence is fundamentally fair, this court does consider whether the petitioner had an opportunity to cross-examine a witness who provided out-of-court statements. That's her argument, is that he had no opportunity to cross-examine anybody. That's correct, Your Honor. And so the relevant question here is not so much, you know, whether these statements fall within the contours of the formal hearsay rule, but whether under this court's cases the petitioner was required to have an opportunity to cross-examine his ex-wife, who was, for intensive purposes, the declarant in those statements. Thank you, Counsel. So records show—we have all these records that show that he lived there for an overlapping period. But there are also records showing that he lived there with his wife for the same period. Is that right? With his second wife, Your Honor? Yes. Yes, yes, that's correct. He did submit some bank statements, some Internet bills that have both of their names on it. He also submitted some other statements that listed only him, listed his second wife as a care of addressee. He submitted a lease that had both their names on it but only had one signature. So he did submit some evidence that tended to support his application. Well, unless there was something that had her signature on it, was there a lease or anything that she— I mean, people can send letters to people at addresses where they don't live, and that's true with regard to all of this. But we have Ms. Kahn representing that she lived there. Do we have Ms. Flores writing anything for that period that she lived there? So there is a lease that's dated 2007 that has both of their names on it. There's only one signature on it, and it's hard to read the signature. My best reading of that signature is it starts with an A, which is the petitioner's first name. So I think a fair reading is that that signature on that lease is from the petitioner, not from Ms. Flores. There are some joint bank statements that both of their names appear on. So there's not, like, a statement from Ms. Flores during that time. Now, Ms. Flores did submit a declaration that said that she had entered into the marriage— that the marriage with the petitioner was a bona fide marriage. Again, later, when the court issued a subpoena to have her come testify in court, this was after all the information came out about the flights and the fact that the petitioner had lied about being present at his third child's birth. After that information came out, the immigration judge issued a subpoena to Ms. Flores, and she declined to appear in court. But she had previously submitted the declaration in which she asserted in that declaration that the marriage was bona fide. But there is also all of this other evidence that tends to suggest that the marriage was not entered into in good faith. And on relief for removal, it is the petitioner's burden. And again, there's the evidence that he lied to the court about several different issues, that he had engaged in a sexual relationship with his first wife right around the time that he was— I mean, it can prove that he was having an affair on the side. That's not going to prove much about the marriage, is it? Well, so the test for whether a marriage was entered into in good faith, Your Honor, is whether the couple intended to establish a life together at the time they were married. Certainly it's not dispositive, but it sort of— And have a relationship with this other woman as well. That's really not a dispositive point, Your Honor, but it does fall into the bucket with the other evidence tending to show that the petitioner did not enter into the marriage in good faith. I mean, that's the main thing it demonstrates, is that he's not a believable person. That's correct, Your Honor. So what, in summary, and looked at from your direction, i.e., whether he established— what does he have to establish for the release? He has to establish by the preponderance the evidence that he entered into the marriage in good faith. This is INA Section 216C4. Okay, and what—just in quick summary, what is the evidence— why do you think he didn't establish that? So he lied about various issues. Immigration just found that he had made an adverse credibility finding. Not credible. Nothing that he says on his behalf is to be believed. That's number one. What else? So there's the evidence that he went on flights with his first wife in 2007 and 2009. It's on the same flight. And in 2007, the outbound and returning flight were three months apart. He claims that this was because they were— So this Court has held, Your Honor, that actions after the marriage are relevant to the extent they bear on the subjective intent of the parties at the time of the marriage. And what those flights show is that he continued a relationship with his first wife even after entering into the marriage with his second wife. And that goes to the question of whether the purpose of the marriage with his second wife was bona fide or whether it was for the purpose of obtaining immigration benefits while he maintained a relationship with his first wife. Is it critical to this that it was his first wife, not just some other woman? It does perhaps add perhaps an additional thumb on the scale, Your Honor. If he had had a prior relationship with somebody that he was not married to and continued that relationship even into the marriage with Ms. Forres, I think that would still be relevant. Perhaps it's a little bit stronger of a thumb here because that prior relationship was based on marriage. There is the evidence as well that he worked at the same company as his first wife. And again, this is not necessarily standing alone in this faucet piece of evidence, but it does tend to show that they were sort of still moving in the same spheres, still had connections even though he claimed that he hadn't seen her at all and had severed that relationship because he had fallen in love with his second wife and had entered into the marriage with his second wife. But it really does implicate the truth of that testimony. I'm sorry, Your Honor, can you repeat that? What it really does is implicate the truth of his testimony about why he entered into the marriage with his second wife. I think that's correct, Your Honor. If there are no further questions, we would ask this Court to deny the petition. Thank you. Ms. Reynolds, we'll give you a minute. Oh, thank you. Okay, I would just note that I think that the government is wrong about who holds the burden of proof. Subsection 4 of 1186A actually applies only to a hardship waiver, and even the immigration judge noted that the Department has the burden of proof by preponderance of the evidence in the event that... But the BIA specifically found and mentioned in footnote 2 that you had admitted the alternative ground for removability. So removability was established. At that point, we're talking about relief from removability, and wouldn't that be your burden? Not when it comes to the 751. So the termination, once a termination of, and it's right there in 1186A C3D, and also that is on page 68 of the administrative record in the immigration judge's decision, she actually finds that because there was an interview and because there was a valid marriage, legally valid, and there was a finding that it was not bona fide, under 1186 small a C3D, the burden is actually on the government. Even though it's relief, it's actually just a renewal of a 751 petition, like the petition to remove the conditions on permanent residence, and because it is a renewal of a 751 that was denied by USCIS, the burden is still on the government. By a preponderance of the evidence. In the BIA, and I have not looked at this, but there's a citation in the BIA opinion saying that the burden's on the respondent with regard to the waiver of the matter of Mendez. It doesn't say that? The finding of the burden of proof is on the alien, even though the marriage valid was injuring him. Is that wrong? I do believe that that's wrong, Your Honor, because of the plain language of 1186A C3D. Okay, thank you very much. Thank you, Your Honors. Very well argued. Thank you. The case is submitted, and we will go to the next case, which is United States v. Brown.
judges: Baldock, Berzon, Collins